UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY DUNKLEE,

    Plaintiff,

v.                                      Case No. 1:17-cv-402
                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of March 15, 2011. PageID.265. Plaintiff identified her disabling conditions as: post-traumatic stress disorder (PTSD); bipolar disorder; depression; anxiety; and has a hard time leaving the house and a lack of energy. PageID.268. Prior to applying for DIB, plaintiff completed one year of college and had past employment as an assembler at an auto parts manufacturer, a paint spray inspector, and a stock clerk. PageID.59, 98, 269. An Administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 9, 2015. PageID.50-61. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.   LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 15, 2011, and met the insured status requirements of the Social Security Act through December 31, 2015. PageID.52-53.

At the second step, the ALJ found that plaintiff had severe impairments of: major depressive disorder, bipolar disorder, panic disorder, post-traumatic stress disorder; and schizoaffective disorder, depressive type. PageID.53. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.53.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: one to two step tasks, no contact with the public, occasional contact with coworkers, with no tandem tasks, occasional contact with supervisors, no more than one change in job duties per week.

PageID.54. The ALJ also found at the fourth step that plaintiff is unable to perform any past relevant work. PageID.58.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.59-60. Specifically, the ALJ found that plaintiff could perform the requirements of work at all exertional levels in the national economy such as line attendant (light, unskilled, 25,000 jobs), bander (light, unskilled, 25,000 jobs), and picker (light, unskilled, 25,000 jobs). PageID.60. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 15, 2011 (the alleged onset date) through December 9, 2015 (the date of the decision). PageID.61.

### III. DISCUSSION

Plaintiff set forth one general issue on appeal with several sub-issues:

**The ALJ erred by failing to consider the medical opinion evidence consistent with the regulations and Sixth Circuit precedent.**

4

**A.     The ALJ erred by failing to account for the mental limitations opined by the Agency's consultative expert in the residual functional capacity (RFC) finding, despite facially adopting this opinion.**

**1.     The opinion and examination of consultative examiner, Wayne Kinzie, Ph.D.**

**2.     The ALJ erred in failing to include the limitations assessed by Dr. Kinzie in his RFC finding, despite assigning his opinion "great weight."**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Plaintiff contends that the ALJ failed to properly assess her RFC because he did not include mental limitations identified by Dr. Kinzie, the consultative examiner.

The ALJ addressed Dr. Kinzie's opinions as follows:

> In April 2015, the claimant participated in a consultative examination with Wayne Kinzie, Ph.D. (Exhibit 7F). The claimant reported difficulty maintaining appropriate focus and concentration with accompanied panic and anxiety attacks and suicidal thoughts and depression. The claimant exhibited difficulty formulating responses and seemed confused. Dr. Kinzie noted the claimant's answers were not well organized and responded slowly. However, the claimant was cooperative, and did not indicate any hallucinatory experiences. The claimant described she was able to engage in most domestic chores and did not describe she was limited in this area. Dr. Kinzie assessed the claimant with persistent depressive disorder with anxious distress and major depressive episode, moderate to severe; schizoaffective disorder, depressive type; and agoraphobia. Dr. Kinzie recommended outpatient therapy to maintain civility in her life, but her problems were being managed moderately well with her prescribed medications (Exhibit 7F).

*     *     *

> Following the claimant's psychological consultative examination, Dr. Kinzie assigned the claimant a guarded prognosis and concluded her problems were chronic and at times, servere [sic]. However, Dr. Kinzie further opined her impairments seemed to be moderately well managed with her medication regimen. In his medical source statement, Dr. Kinzie opined the claimant had mild to marked limitations in her abilities to remember instructions, carry out instructions, and make work related decision. He added the claimant had moderate to marked limitations in her ability to interact appropriate with the public, supervisors, co-workers, and respond appropriately to changes in a routine work setting (Exhibit 7F). Dr. Kinzie's opinion is consistent with his own examination of the claimant and her current conservative psychiatric treatment including only medication management. While Dr. Kinzie confirms the claimant has serious mental impairments, they are currently well managed with medication and would not prohibit her from being able to engage in all work activity. For these reasons, I assign great weight to Dr. Kinzie's opinion.

PageID.56, 58.

The gist of plaintiff's claim is that:

> Ultimately, the ALJ's error was by failing to "accept and include or reject and explain" the limitations set forth in Dr. Kinzie's opinion. As it stands, it is literally impossible to tell whether the ALJ intended to include the limitation in the RFC finding and inadvertently omitted it or intended to reject it and did so for legally sufficient reasons.

Plaintiff's Initial Brief (ECF No. 10, PageID.794).

Plaintiff's claim is without merit. In his narrative report, Dr. Kinzie found that while plaintiff had problems which were "rather chronic and, at times, severe," the problems "seem to be moderately well managed with currently prescribed medications." At the same time, Dr. Kinzie stated that plaintiff "becomes easily confused," "has difficulty maintaining the necessary focusing and concentration," and "had difficulty in formulating responses" at the examination. PageID.678. As the ALJ discussed, Dr. Kinzie translated these findings into marked restrictions in plaintiff's ability to do work-related activities (e.g., understand, remember, carry out or make judgments related to complex work instructions, interact appropriately with the public, and respond appropriately to usual work situations and changes in work routine). PageID.680-681.

The ALJ adopted these restrictions when he found that plaintiff had the RFC to perform "one to two step tasks, no contact with the public, occasional contact with coworkers, with no tandem tasks, occasional contact with supervisors, no more than one change in job duties per week." PageID.54. Accordingly, plaintiff's claim of error will be denied.

> **B. The ALJ erred when he failed to evaluate the opinions of Plaintiff's treating providers in accordance with Agency policy and Sixth Circuit Precedent.**
>
> **1. The opinions of Jenny Griffiths, ANP-BC and Michael Thebert, M.D.**
>
> **2. HARM: The limitations described in the opinions met plaintiff's burden of establishing that she is disabled as defined by the Agency.**
>
> **3. The ALJ did not give "good/specific/supported" reasons for rejecting the opinions of Nurse Practitioner Griffiths and Dr. Thebert.**
>
> **4. The underlying record is not inconsistent with the opinions of Dr. Thebert and Nurse Practitioner Griffiths.**

The Court views the opinions, co-signed by Dr. Thebert, as opinions of a treating physician. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight

to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed these opinions as follows:

> In March 2014, Jenny Griffiths, ANP and Michael Thebert, M.D., completed a medical source statement regarding the claimant's anxiety. Ms. Griffiths and Dr. Thebert opined the claimant exhibited generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation, vigilance and scanning with a persistent irrational fear of a specific object, activity or situation and experiences recurrent panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and a sense of impending doom at least once a week. Additional "B criteria" was provided and indicated marked and extreme limitations with a note "there are days Amy has to have her husband come home or stay with her" (Exhibit 4F). While the record supports the claimant has symptoms of anxiety, the progress notes from Ms. Griffiths and Dr. Thebert do not support the extreme symptoms and limitations described above. Rather, during treatment, the claimant reported she had been feeling quite stable with "some panic attacks." While I recognize the claimant has ongoing symptoms, they have generally remained moderate in nature with very limited conservative treatment and has not required emergency crisis services or

8

inpatient psychiatric treatment. For these reasons, I assign little weight to the opinion of Ms. Griffiths co-signed by Dr. Thebert.

Ms. Griffiths and Dr. Thebert also completed a medical source statement regarding the claimant's depression in March 2014 (Exhibit 5F). They opined the claimant's exhibited a disturbance of mood accompanied by full or depressive syndrome including anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, hallucinations, delusions or paranoid thinking. Ms. Griffiths and Dr. Thebert also stated the claimant had mild symptoms of manic syndrome and suffered from bipolar with episodes manifested by the full symptomatic picture of both manic and depressive syndromes. Ms. Griffiths and Dr. Thebert also indicated marked and extreme "B criteria" and noted the claimant "has some mild manic symptoms but spend [sic] most of her time in and out of depression, anxiety and psychosis" (Exhibit 5F). Again, I note the claimant's history of treatment for her mental health impairments including depression. However, the number of symptoms Ms. Griffiths and Dr. Thebert have indicated are not fully supported by the evidence as a whole and specifically their own progress notes. Rather, the progress notes indicate the claimant has been doing well and stable on her current medication regimen without ongoing counseling or more than conservative treatment. The claimant's ability to engage in daily activities and her own report to Dr. Kinzie that she is able to perform them, along with her use of social media, ability to grocery shop and interact with family members suggest mild to moderate limitations in the "B criteria." Finally, Ms. Griffiths and Dr. Thebert suggest the claimant has had episodes of decompensation, but the evidence of record simply does not support this conclusion. The claimant has had one inpatient hospitalization, prior to the alleged onset date, and again, has been stable with reports from Ms. Griffiths and Dr. Thebert that she is "doing well" and "stable" without evidence of psychosis (Exhibit 3F). For these reasons, I assign little weigh [sic] to Ms. Griffiths and Dr. Thebert opinion.

In January 2015, Ms. Griffiths and Dr. Thebert completed a mental health questionnaire and opined she [sic] identified with all the signs of depressive disorder and most for manic syndrome and indicated specifically her obsessive thinking, suicidal thoughts, and always seeing the worst things happening. Ms. Griffiths and Dr. Thebert indicated the claimant would be absent from work more than four days per month (Exhibit 8F). The opinion of Ms. Griffiths and Dr. Thebert is not consistent with medical evidence including their own treatment notes as well as the very limited conservative treatment including only medication management around the time surrounding this opinion. Rather, the medical evidence supports the claimant has done moderately well with conservative mental health treatment. For these reasons, I assign little weight to the opinion of Ms. Griffiths and Dr. Thebert.

PageID.57-58.

After reviewing the record, the Court concludes that the ALJ properly evaluated the opinions, that the evaluation is supported by substantial evidence, and that the ALJ gave good reasons for the weight assigned to the opinions. While record reflects that the ALJ summarized plaintiff's medical history, PageID.55-56, plaintiff takes issue with that summary. In support of her claim that the ALJ's opinion was not consistent with the medical record, plaintiff's brief includes an extensive discussion of her mental health history and treatment. PageID.802-807. Plaintiff's presentation effectively asks this Court to re-weigh the evidence and reach the conclusion that the ALJ erred in finding that plaintiff was doing "moderately well." PageID.807. This is beyond the scope of this review. *See Brainard*, 889 F.2d at 681 (the court does not review the evidence de novo, make credibility determinations or weigh the evidence). Accordingly, plaintiff's claim of error will be denied.

IV. **CONCLUSION**

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 27, 2018  /s/ Ray Kent
United States Magistrate Judge